Edward D. Rogers (No. 054251994)
rogerse@ballardspahr.com
Heath Khan (*pro hac vice*)
khanh@ballardspahr.com
Elizabeth A. Lilly (*pro hac vice*)
lillye@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
Telephone: 215.665.8500

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KELLY GRINK, DIANE TRUMP, and STEVEN MOLNAR, individually and on behalf of the Virtua Inc., 401(k) Plan, the Virtua 403(b) Retirement Program, and all the similarly situated Participants and Beneficiaries of the Plans, | : <br> : <br> : <br> : <br> : CASE NO. 1:24-CV-09919-CPO-AMD |
| Plaintiffs, | : |
| v. | : |
| VIRTUA HEALTH, INC., BOARD OF DIRECTORS OF VIRTUA HEALTH, INC., FINANCE AND INVESTMENT COMMITTEE, and VIRTUA DEFINED CONTRIBUTION PLANS RETIREMENT SUB-COMMITTEE, | : **REPLY IN SUPPORT OF** <br> : **DEFENDANTS' PARTIAL** <br> : **MOTION TO DISMISS THE** <br> : **SECOND AMENDED CLASS** <br> : **ACTION COMPLAINT** |
| Defendants. | : Motion Day: May 18, 2026 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT...................................................................................................... 1

    A. Plaintiffs' New Fiduciary Arguments Are Legally Insufficient. ......... 1

    B. Count I Fails to State a Breach of Duty Claim Under Any Theory................................................................................................... 4

        1. Plaintiffs Do Not Allege the Necessary "Motive or Purpose" to State a Duty of Loyalty Claim. ............................. 4

        2. Plaintiffs Do Not Allege Meaningful Benchmarks or Other Requirements for a Duty of Prudence Claim................... 7

            a. Inclusion of the Lincoln SVA in the Plans Cannot Support Liability............................................................... 7

            b. The Recordkeeping Fees Claim Fails on Multiple Grounds.............................................................. 9

    C. Count II Does Not State a Claim Based on Lincoln's Administrative Fees........................................................................... 11

    D. Plaintiffs' Prohibited Transaction Claim in Count III is Time-Barred and Impermissibly Vague....................................................... 12

    E. ERISA's Safe Harbor Provides a Separate Dispositive Basis to Dismiss Claims Relating to the 403(b) Program. ............................. 14

    F. Plaintiffs' Claims Should be Dismissed with Prejudice. ................... 14

III. CONCLUSION................................................................................................ 15

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Gynecology & Laparoscopy of N. Jersey, P.C. v. Cigna Health & Life Ins. Co.*,
No. CV 19-22234 (ES) (MAH), 2024 WL 3159414 (D.N.J. June 25, 2024) ..................................................................................15

*Bd. of Trs. of Bricklayers & Allied Craftsman Loc. 6 v. Wettlin Assocs., Incl.*,
237 F.3d 270 (3d Cir. 2001) ..................................................................2

*Cho v. Prudential Ins. Co. of Am.*,
No. CV 19-19886 (JMV) (SCM), 2021 WL 4438186 (D.N.J. Sept. 27, 2021) ....................................................................5, 6, 8, 9, 14

*Goldenberg v. Indel, Inc.*,
741 F. Supp. 2d 618 (D.N.J. 2010)......................................................10

*Grink v. Virtua Health, Inc.*,
812 F. Supp. 3d 434 (D.N.J. 2025)...............................................*passim*

*Jacobs v. Hackensack Meridian Health, Inc.*,
No. 25CV1272 (EP) (CF), 2026 WL 710229 (D.N.J. Mar. 13, 2026) ...................................................................................8, 9

*Kruchten v. Ricoh USA, Inc.*,
No. 23-1928, 2024 WL 3518308 (3d Cir. July 24, 2024) ....................5

*Luense v. Konica Minolta Bus. Sols. U.S.A., Inc.*,
541 F. Supp. 3d 496 (D.N.J. 2021)......................................................12

*Mator v. Wesco Distribution, Inc.*,
102 F.4th 172 (3d Cir. 2024) .......................................................7, 8, 9

*McCaffree Fin. Corp. v. ADP, Inc.*,
No. CV205492ESJRA, 2023 WL 2728787 (D.N.J. Mar. 31, 2023)....6, 7, 10, 11

*Morin v. Essentia Health*,
2017 WL 4083133 (D. Minn. Sept. 14, 2017)......................................12

ii

*In re Mushroom Transp. Co., Inc.*,
    382 F.3d 325 (3d Cir. 2004) ...............................................................................2

*Olson v. Ako*,
    724 F. App'x 160 (3d Cir. 2018) .......................................................................12

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)............................................................................................1

*In re RCN Litig.*,
    No. 04-5068, 2006 WL 753149 (D.N.J. Mar. 21, 2006) .................................2, 3

*Seibert v. Nokia of Am. Corp.*,
    No. CV 21-20478 (ES) (AME), 2023 WL 5035026 (D.N.J. Aug. 8,
    2023) .........................................................................................................9, 10, 11

*Silva v. Evonik Corp.*,
    No. CV 20-2202, 2020 WL 12574912 (D.N.J. Dec. 30, 2020).........................10

*Sweda v. Univ. of Pa.*,
    923 F.3d 320 (3d Cir. 2019) ...........................................................................5, 10

*Wildman v. Am. Century Servs., LLC*,
    237 F. Supp. 3d 902 (W.D. Mo. 2017).............................................................12

**Other Authorities**

29 C.F.R. § 2509.75-8, D-4 .................................................................................3

29 C.F.R § 2510.3-2(f)........................................................................................14

## I.  <u>INTRODUCTION</u>

Like their Second Amended Complaint, Plaintiffs' opposition brief avoids grappling with the deficiencies identified by the Court in its prior Opinion.  *See Grink v. Virtua Health, Inc.,* 812 F. Supp. 3d 434 (D.N.J. 2025).  Instead, Plaintiffs mostly repeat arguments the Court has already rejected, mixed with pleas that any remaining concerns be deferred until later in the case or that they be allowed to amend one more time.  None of Plaintiffs' new or refurbished claims is legally viable, and the Court should dismiss each of those claims.

## II.  <u>ARGUMENT</u>

### A.  **Plaintiffs' New Fiduciary Arguments Are Legally Insufficient.**

The Court has already held that the Virtua Board is not a fiduciary for any relevant purpose, and that Virtua is a fiduciary only with respect to the initial inclusion of the Lincoln Stable Value Account (the "SVA") as an investment option in the Plans.  *Grink,* 812 F. Supp. 3d at 450.  In so holding, the Court followed the United States Supreme Court's directive that "'the threshold question [to determine liability] . . . is whether that person was acting as a fiduciary . . . *when taking the action subject to complaint.*'"  *Id.* at 448 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (emphasis and ellipses added by the Court)).  The Court proceeded to explain that "Plaintiffs would 'need to allege that [Virtua and the Virtua Board] caused the [Committee or Sub-Committee] to relinquish

their independent discretion in' performing the conduct at issue." *Id.* at 449

(quoting *In re RCN Litig.,* 2006 WL 753149, *8 (D.N.J. Mar. 21, 2006)).

Contrary to Plaintiffs' position, the Third Circuit decisions they cite

underscore that a defendant's fiduciary status must be tied to the conduct at issue.

*See, e.g., In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 346–47 (3d Cir. 2004)

(cited in Opp'n Br. at 9) ("in its role as holder of Mushroom's escrowed funds,

PVHR simply was not a fiduciary" as defined in ERISA); *Bd. of Trs. of*

*Bricklayers & Allied Craftsman Loc. 6 v. Wettlin Assocs., Incl.*, 237 F.3d 270, 274

(3d Cir. 2001) (cited in Opp'n Br. at 11) (day-to-day administrator of ERISA plan

was not a fiduciary with respect to claim for wrongful denial of benefits to an

individual).

As explained by the United States Department of Labor in a Q&A document

cited by Plaintiffs (*see* Opp'n Br. at 8):

> [T]he board of directors may be responsible for the selection and retention of
> plan fiduciaries.  In such a case, members of the board . . . "exercise
> discretionary authority . . . respecting management of such plan" and are,
> therefore, fiduciaries with respect to the plan.  However, their responsibility,
> and, consequently, their liability, **is limited to the selection and retention**
> **of fiduciaries.**

29 C.F.R. § 2509.75-8, D-4 (emphasis added).

For example, if Plaintiffs had alleged that the Virtua Board acted

imprudently by stacking the Committee with individuals who had conflicts of

interest or were financially illiterate, the Virtua Board would be fiduciaries as to

2

that claim.  Here, by contrast, there is a mismatch between the alleged basis for fiduciary status and the challenged conduct, which consists of the Committee Defendants' decisions in managing the plan.  As to those decisions, neither Virtua nor the Virtua Board is a fiduciary.

Without acknowledging the requirement to link fiduciary status to the "conduct at issue," Plaintiffs simply repeat their claim that "the Board allegedly 'exercised discretionary authority to appoint and monitor Plan fiduciaries who had control over Plan management,' . . . *i.e.*, the Committee."  Opp'n Br. at 8.  But the Court has already rejected identical allegations made in the First Amended Complaint.  *See Grink*, 812 F. Supp. 3d at 449; *compare* SAC, ECF No. 83, ¶ 35 *with* FAC, ECF. No. 39, ¶ 31 (containing identical allegations regarding the duty to monitor other fiduciaries).

Plaintiffs also cannot dodge dismissal on the issue of fiduciary status by characterizing the issue as a "mixed question of fact and law."  Opp'n Br. at 11. Multiple decisions in this Circuit, including the Opinion and other cases, routinely address fiduciary status at the pleading stage as a critical threshold question of ERISA liability.  *See Grink,* 812 F. Supp. 3d at 449 (quoting *In re RCN Litig.*, 2006 WL 753149 at 8).

Ultimately, Plaintiffs offer no new allegations or any legal arguments that would warrant reversal of the Court's earlier decision regarding the fiduciary status

3

of the Defendants.  For that reason, and those explained in Defendants' moving brief, the Court should renew its holding that the Virtua Board is not a fiduciary for any relevant purpose, and that Virtua is not a fiduciary except with respect to its contracting with Lincoln to provide the SVA.[1]  Because Virtua contracted with Lincoln to provide the SVA in 2015, outside the statute of limitations, Virtua should be dismissed from this case, along with the Virtua Board.

### B.    Count I Fails to State a Breach of Duty Claim Under Any Theory.

#### 1.    Plaintiffs Do Not Allege the Necessary "Motive or Purpose" to State a Duty of Loyalty Claim.

Plaintiffs identify "four categories" of allegations that supposedly supply the motive missing from their prior duty of loyalty claim.  *See* Opp'n Br. at 12–13. The first three categories relate to Lincoln's alleged compensation for inclusion of the SVA as an investment option in the Plan, and the fourth category consists of the decision to retain the SVA despite alleged underperformance.

Once again, these allegations are not new but rather appeared in substantially identical form in the First Amended Complaint.  *Compare* SAC ¶¶ 65–74 *with* FAC ¶¶ 63–74 (covering Plaintiffs' first two categories, regarding alleged revenue-sharing with Lincoln and its receipt of spread income); *compare*

---

[1]   Plaintiffs also argue in their brief that the Committee was a fiduciary with respect to the LifeSpan Models portfolios in the Plan after April 2022.  This claim makes no sense because Plaintiffs abandoned their LifeSpan Models claim in the Second Amended Complaint.  *See* Mov. Br. at 6 n.1.

SAC ¶ 77 *with* FAC ¶ 73 (covering Plaintiffs' third category, regarding the SVA's being a component of the Plans' QDIA); *compare* SAC ¶¶ 55–64, 83–95 *with* FAC ¶¶ 53–62, 79–84 (covering Plaintiffs' fourth category regarding the allegations that the SVA was retained despite the availability of higher-yielding alternatives).

More fundamentally, none of the "four categories" of allegations supports an inference of improper motive. Plaintiffs' theory of motive is that, for some unidentified reason, the Committee Defendants wanted to line Lincoln's pockets by overpaying administrative fees and offering the Lincoln SVA in the Plans. *See* Opp'n Br. at 12–13. Yet the Second Amended Complaint contains no allegations even hinting at this imagined motive. Plaintiffs' theory of motive also makes no sense, especially because Plaintiffs do not allege the Committee Defendants would somehow benefit by favoring Lincoln's interests over the interests of Plan participants.

In addition, the cases Plaintiffs cite in support of their repackaged duty of loyalty claim are either inapposite or support dismissal. Neither *Kruchten v. Ricoh USA, Inc.*, No. 23-1928, 2024 WL 3518308, *2 (3d Cir. July 24, 2024) nor *Sweda v. Univ. of Pa.*, 923 F.3d 320, 331 (3d Cir. 2019) (both cited in Opp'n Br. at 14), includes any analysis regarding the duty of loyalty. Equally unpersuasive is Plaintiffs' argument that *Cho v. Prudential Ins. Co. of Am.,* No. CV 19-19886 (JMV) (SCM), 2021 WL 4438186, *11–12 (D.N.J. Sept. 27, 2021), and *McCaffree*

5

*Fin. Corp. v. ADP, Inc.*, No. CV205492ESJRA, 2023 WL 2728787, *16 (D.N.J. Mar. 31, 2023) "confirm, rather than undermine, the SAC's sufficiency." Opp'n Br. at 15–16.

Plaintiffs try to distinguish *Cho* by contending that the "nondisclosure" of Lincoln's spread income shows that the Committee Defendants were "obscuring the relationship between itself and [Lincoln]." Opp'n Br. at 15 (quoting *Cho,* 2021 WL 4438186 at *12). Contrary to Plaintiffs' argument, Virtua's Form 5500 expressly *disclosed the relationship* between Lincoln, the SVA, and the Plan. *See, e.g.,* SAC ¶ 198; ECF No. 86-5, Ex. 4 at 4, 10, 34–37, 2020 Form 5500. Moreover, the court in *Cho* dismissed the duty of loyalty claim on the ground that the plaintiff had not alleged that the "challenged fund" or the "recordkeeping services were imprudent." 2021 WL 4438186 at *11. Similarly, here, Plaintiffs' failure to allege imprudence related to the SVA and Lincoln's recordkeeping services precludes a disloyalty claim based on those allegations.

And in *McCaffree*, the Court held that allegations far more robust than Plaintiffs' allegations here did not state a loyalty claim. Unlike here, the Plaintiffs in *McCaffree* alleged that the recordkeeper had significant control over plan investment options and chose to include many of its own proprietary funds as offerings, which increased the fees it received. 2023 WL 2728787 at *16. The court in *McCaffree* held that, although those allegations suggested a conflict of

6

interest, they did not supply an improper motive, as distinguished from another case where participants alleged the defendants retained a recordkeeper's services "in exchange for [the recordkeeper] marketing and selling the defendants' business." *Id.* at *17.  As in *McCaffree*, "[n]o such allegations are present here." *Id.*

Plaintiffs' failure to provide any factual allegations from which the Court can plausibly infer that the Committee Defendants stood to benefit from allegedly excessive payments to Lincoln dooms their duty of loyalty claim.  Without such allegations, this is just a repackaged and legally insufficient imprudence claim.

> **2.    Plaintiffs Do Not Allege Meaningful Benchmarks or Other Requirements for a Duty of Prudence Claim.**
>
> **a.    Inclusion of the Lincoln SVA in the Plans Cannot Support Liability.**

The Court previously dismissed Plaintiffs' claim based on Virtua's decision to offer the Lincoln SVA as an investment option because Plaintiffs had failed to allege "meaningful benchmarks" for the Lincoln SVA, defined as "specific and sufficiently similar" comparators.  *Grink,* 812 F. Supp. 3d at 454 ("nothing about these alleged comparators support an allegation that the SVA underperformed" and "the chart is merely a comparison of each investments' crediting rate and fails to substantively show how the investments performed overall."); *see also id.* at 452 ("Benchmarks must be specific and sufficiently similar to render the comparisons

7

meaningful.") (citing *Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 188 (3d Cir. 2024); *Cho*, 2021 WL 4438186 at \*8).

In their opposition brief, Plaintiffs begin by defending their choice of comparators as meaningful benchmarks and insisting that the crediting rate of an annuity is its key performance metric. Opp'n Br. at 16–17. Even assuming *arguendo* that Plaintiffs are right about the latter point, their brief points to no allegations in the Second Amended Complaint supporting a finding that the comparator funds are meaningful benchmarks.

Realizing their vulnerability on this point, Plaintiffs argue at length that evaluation of benchmarks is "a merits question for discovery." Opp'n Br. at 18; *see id.* at 18–21. The law is otherwise. Earlier this year, another court in this district relied on the Opinion to reject this precise argument in an ERISA case alleging a breach of duty based on inclusion of a stable value fund. *See Jacobs v. Hackensack Meridian Health, Inc.,* No. 25CV1272 (EP) (CF), 2026 WL 710229, \*12 (D.N.J. Mar. 13, 2026). Like Plaintiffs here, the *Jacobs* plaintiffs argued that the court should not engage in the "meaningful benchmark" inquiry on a motion to dismiss. *Id.* at \*9. Following its consideration of "multiple Third Circuit cases, district court cases in the Third Circuit, and cases from other Courts of Appeals which the Third Circuit has endorsed and/or relied on," the *Jacobs* court rejected that argument and dismissed the claim. *Id.* at \*10. Ultimately, the court held that

"[p]laintiffs' assertions that . . . disagreements over fund comparators are not up for consideration at the motion to dismiss stage amount to an overgeneralized and inaccurate portrayal of Third Circuit law." *Id*.

In fact, the Third Circuit in *Mator* engaged in a thorough analysis of the plans' services, sizes, and fee calculations, looking at more than 10 comparators for some claims and assessing those comparators against multiple thresholds, to determine that they were sufficient to plausibly state a claim. 102 F.4th at 186–88. Numerous other courts in the District of New Jersey have performed the meaningful benchmark analysis at the motion to dismiss stage as well. *See, e.g., Jacobs,* 2026 WL 710229 at *12; *Cho*, 2021 WL 4438186 at **8–9, n.7; *Seibert*, 2023 WL 5035026 at **5–6.

Under these authorities, an inquiry into the sufficiency of Plaintiffs' comparators is appropriate on this motion, and since Plaintiffs have again failed to provide meaningful benchmarks, their claim regarding the retention of the SVA must be dismissed.

**b.      The Recordkeeping Fees Claim Fails on Multiple Grounds.**

Plaintiffs inexplicably persist in basing their recordkeeping fees claim on a clear mathematical error that drastically inflates Lincoln's administrative fees. *See* ECF No. 47 at 2 ("the Plan documents upon which Plaintiffs rely show that these fees actually consist of the 16 basis points on the total Plan assets minus the 55

9

basis points on the Stable Value Fund. When properly calculated, these fees fall below what even Plaintiffs allege is a reasonable level."); ECF No. 59 at 9 (same).

Plaintiffs also do not compare the Plan's administrative fees with those paid by similar plans for the same services, *i.e.*, they fail to provide meaningful benchmarks. Instead of identifying benchmarks, Plaintiffs claim based on out-of-circuit case law that a bright-line legal rule limits reasonable fees to $35 per participant per year. *See* SAC ¶ 192. No such rule exists, either in the cases cited by Plaintiffs or elsewhere. To the contrary, another court in this District has found that "there is no 'categorical benchmark' to determine whether fees are excessive." *Silva v. Evonik Corp.,* No. CV 20-2202, 2020 WL 12574912, *6 (D.N.J. Dec. 30, 2020) (citing *Goldenberg v. Indel, Inc.,* 741 F. Supp. 2d 618, 636 (D.N.J. 2010)). The fact that other courts presented with different fact patterns have found fees averaging $35 to be reasonable is not determinative here.

The Third Circuit requires plaintiffs to allege meaningful benchmarks showing that the fees paid were "higher than those paid by **similar plans** for the **same services**." *Seibert v. Nokia of Am. Corp.,* No. CV 21-20478 (ES) (AME), 2023 WL 5035026, *6 (D.N.J. Aug. 8, 2023) (emphasis added) (detailing the holding in *Sweda*, 923 F.3d at 330–31).[2] Accordingly, "[a] high fee alone does not

---

[2]    Plaintiffs cite to *Seibert* for the proposition that "[s]imilar [fee] allegations have been upheld in this District," Opp'n Br. at 23, but that opinion only highlights the shortcomings of the Second Amended Complaint. There, the

mandate a conclusion that recordkeeping fees are excessive; rather, fees must be evaluated 'relative to the services rendered.'" *McCaffree*, 2023 WL 2728787 at *14 (citation omitted). Thus, Plaintiffs' argument that the Plan is large enough to have "bargaining power" to negotiate fees, Opp'n Br. at 24, does nothing to move the needle. Without allegations of fees paid by similar plans for the same services, there is no basis to assume the Committee Defendants failed to prudently use their bargaining power. In sum, Plaintiffs' imprudence claim based on Lincoln's fees fails as a matter of law.[3]

### C.    Count II Does Not State a Claim Based on Lincoln's Administrative Fees.

Plaintiffs admit that Count II is an "ERISA[] duty of loyalty" claim based on Lincoln's fees. Opp'n Br. at 25–26. As explained in Part II.B.2.b., *supra*, Plaintiffs have failed to adequately allege Lincoln received excessive fees and, thus, this claim fails. And, even if they had, Count II would still fail for the reason detailed in Part II.B.1, *supra*: Plaintiffs have not adequately alleged, as is necessary

---

plaintiffs compared the plan's recordkeeping and administrative fees "to seven *specific* plans of a similar size" (emphasis in original) and presented allegations regarding "types of recordkeeping services provided" including acknowledgment of the difference between "bundled 'fungible' services and à la carte services," the size of plans, general trends, and the fiduciary's specific failures to engage in certain actions. *Seibert*, 2023 WL 5035026 at *8.

[3]    The Court should also dismiss Plaintiffs' MetWest claims because Plaintiff has explicitly abandoned those claims. *See* Opp'n Br. at 25.

for a duty of loyalty claim, that Defendants had a motive to favor Lincoln to the detriment of Plan participants.

For the first time in their opposition brief, Plaintiffs now claim that "Defendants . . . failed to explore alternative recordkeepers for the Plan," but the Second Amended Complaint makes no such allegation.  Opp'n Br. at 27 (citing SAC ¶¶ 189–191, 206–213).[4]  But this argument is a non-starter because "it is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'"  *Luense v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 541 F. Supp. 3d 496, 513 (D.N.J. 2021) (quoting *Olson v. Ako*, 724 F. App'x 160, 166 (3d Cir. 2018)).

In sum, Count II should be dismissed with prejudice.

### D.      Plaintiffs' Prohibited Transaction Claim in Count III is Time-Barred and Impermissibly Vague.

The Court previously noted that "[t]he Parties seem to concur that 'annuity transactions'"—on which Plaintiffs' claim is based—"refers to the establishment

---

[4]   In any event, the cases cited by Plaintiffs in this section of their brief are readily distinguishable.  In *Wildman v. Am. Century Servs., LLC*, the court held that allegations of preferential relationships with service providers prevented fiduciaries from seeking competitive alternatives, combined with the fact that plaintiffs had stated a claim for excessive recordkeeping fees, were sufficient to state a claim.  237 F. Supp. 3d 902, 915 (W.D. Mo. 2017).  The court in *Morin v. Essentia Health*, applied a similar standard.  No. 16-CV-4397 (RHK/LIB), 2017 WL 4083133, *12 (D. Minn. Sept. 14, 2017).  But Plaintiffs have not made similar allegations here.

12

of the SVA via the Group Annuity Contract." *Grink,* 812 F. Supp. 3d at 447. "The Group Annuity Contract was executed on July 6, 2015," well outside of the relevant limitations period. *Id.* at 447 n.2, 458 n.14. Therefore, Plaintiffs' prohibited transaction claim is based on Virtua entering into the Group Annuity Contract with Lincoln and is time-barred.

The Second Amended Complaint adds no allegations that might alter the Court's understanding of this claim. Instead, Plaintiffs argue in their brief that "***each and every*** time Lincoln received excessive compensation from the Plans constitutes a separate prohibited transaction," without offering a citation to the Second Amended Complaint. Opp'n Br. at 28 (emphasis in original). But, as noted in the immediately preceding section, Plaintiffs may not amend their complaint through their opposition brief.

Even assuming the prohibited transaction claim in Count III might be read to include any transaction beyond entering into the Group Annuity Contract, it is impermissibly vague. While in certain circumstances subsequent financial transactions can be considered separate from the initial agreement for statute of limitations purposes, *see* Opp'n Br. at 28, that principle does not help here because Plaintiffs have failed to adequately plead any subsequent transactions as a basis for this claim. Plaintiffs refer to "annuity transactions" but never specify: (1) what these transactions are, (2) the dates on which they occurred; and (3) which of the

13

Defendants engaged in such transactions. *See* SAC ¶¶ 241–243; *Cho*, 2021 WL 4438186 at \*6 (dismissing claims "broadly attributing misconduct to all 'Defendants'" because they "generally do not satisfy the basic pleading requirement to provide adequate notice to each Defendant of the specific claims against him"). For this additional reason, Plaintiffs' belated reference to subsequent transactions should be disregarded.

> **E.    ERISA's Safe Harbor Provides a Separate Dispositive Basis to Dismiss Claims Relating to the 403(b) Program.**

Plaintiffs' claims regarding Virtua's retirement benefit plans as set forth in the Second Amended Complaint (and earlier Complaints) do not distinguish between the 401(k) Plan and the 403(b) Program. Accordingly, the above grounds for dismissal apply with equal force to the 403(b) Program. Defendants have separately argued that the 403(b) Program is exempt from ERISA pursuant to Department of Labor regulations section 2510.3-2(f). *See* Mov. Br. at 28–29. In the Court's original Opinion, it did not specifically address Plaintiffs' claims regarding the 403(b) Program. It should take the opportunity to explicitly dismiss those claims now.

> **F.    Plaintiffs' Claims Should be Dismissed with Prejudice.**

The Court has given Plaintiffs a third chance to set forth viable claims, but they have failed to do so, despite having the benefit of pre-complaint document production from Defendants, and a thorough Opinion clearly setting forth the

14

deficiencies of Plaintiffs' claims.  Any further opportunity to amend would be vexatious and futile.  *See Advanced Gynecology & Laparoscopy of N. Jersey, P.C. v. Cigna Health & Life Ins. Co.*, No. CV 19-22234 (ES) (MAH), 2024 WL 3159414, *6 (D.N.J. June 25, 2024) (dismissing with prejudice after repeated amendments following explicit court guidance).

## III.    CONCLUSION

As discussed above, aside from the imprudence claims against the Committee Defendants regarding retention of certain mutual fund share classes and the Oakmark and Goldman SCV funds, the Court should dismiss the Second Amended Complaint with prejudice.

Dated: May 1, 2026

Respectfully submitted,
/s/ *Edward D. Rogers*
Edward D. Rogers, Esq. (No. 054251994)
rogerse@ballardspahr.com
Heath Khan, Esq. (*pro hac vice*)
khanh@ballardspahr.com
Elizabeth A. Lilly, Esq. (*pro hac vice*)
lillye@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500
*Attorneys for Defendants*

15

# <u>CERTIFICATE OF SERVICE</u>

I, Edward D. Rogers, hereby certify that on this 1st day of May, 2026, a true and correct copy of this Reply in Support of Virtua's Partial Motion to Dismiss the Second Amended Class Action Complaint was electronically filed with the Court, which will automatically send notice of same to counsel of record via electronic email. I further certify that unredacted copies of this Reply was sent to counsel of record via electronic email.

*/s/ Edward D. Rogers*
Edward D. Rogers